JUSTICE RICE,
concurring in part and dissenting in part.
¶41 I concur with the Court’s adoption of the statutory language in § 46-21-102, MCA, as the standard to be applied to petitions for postconviction relief involving claims of newly discovered evidence, that standard being whether the new evidence “if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct.” Opinion, ¶ 35. However, because findings of fact have already been entered by the District Court, I would proceed to conduct the legal analysis and apply the new standard to those facts. Indeed, in his opening brief, Marble requests that this Court apply the legal standard to the facts, and reverse his conviction. Alternatively, Marble asks that we remand for application of the Clark test, as we did in Clark. However, as we explained there, remand was necessary for application of the new legal test only because of “our inability to glean from the record the District Court’s reasons for denying the motion for a new trial.” Clark, ¶ 42. Here, we have no such deficit, as the District Court entered extensive findings *380 of fact. As the State’s counsel noted during oral argument, “the facts are the facts,” and they will not change under application of a different legal standard. Since the facts are already determined in this case and we would ultimately review the District Court’s legal conclusions for correctness in any subsequent appeal, there is no legal reason requiring a remand for the District Court to apply the new standard in the first instance.
¶42 The following factual statements are all taken from the District Court’s detailed findings. Thomas was a “credible and believable witness,” both in the original trial and the post-conviction hearing. Thomas’ sworn testimony in this matter, given over a period of 10 years from the original trial, to his deposition and through the postconviction proceeding, was consistent: Marble raped him in the shower as alleged in the Information. Thomas never varied from this account in his multiple statements given under oath.
¶43 Thomas was contacted by the Montana Innocence Project (MIP), who was representing Marble. When meeting with Thomas, MIP did not initially discuss Marble’s case “and it was not until later meetings that [MIP lawyer] Mansch even mentioned Marble.” Thomas was willing to continue meeting with Mansch because Thomas believed MIP was going to help him with his own legal problems and that Mansch would help him get into the military. Mansch “pressed hard” for Thomas to recant his testimony against Marble. Thomas refused to sign an affidavit recanting his testimony that MDP prepared for his signature and refused to recant under oath during the entire time.
¶44 Mansch told Thomas that if he signed a recantation statement, then, in Thomas’ words, “it [would] probably be over with” and “[t]hey shouldn’t need to hear from me again.” Thomas was not advised of his rights to silence or to counsel. Thomas wrote out a short recantation and signed an unsworn recantation statement that had been prepared for him by MIP because he believed that by “giving Mansch what Mansch wanted,” Thomas would obtain help for his own case and with getting into the military. He also signed it “because they didn’t believe me, kept calling back talking to me, calling me a liar when I told them the truth. So I just told them what they wanted to hear.... Badgered into it.” Thomas had also been transferred to the same facility as Marble and been approached by a friend of Marble’s about his testimony.
¶45 Subsequently, under oath, both in his deposition and in the post-conviction hearing, Thomas acknowledged that his recantation statements given to MIP were false and were lies. Thomas believed he “would not get into any trouble” for making a false statement if his *381 statement was not given under oath. Mansch’s “focus on helping Marble” kept Mansch from seeing that Thomas’ recantation “was false and given as part of [Thomas’] attempt to obtain the help of Mansch.” ¶46 “[Significant evidence” was introduced at Marble’s trial to support the jury’s decision that Marble was guilty. Marble was “very, very interested” in taking the plea offer made by the prosecution before Marble’s trial but he did not do so because of his father’s strong feelings against Marble pleading guilty to an offense involving alleged homosexual behavior.
¶47 The only new evidence is Thomas’ unsworn recantation. Although the recantation could be used in a new trial for Marble, the District Court concluded that “[t]he evidence leading up to the signed recantation by [Thomas] is devastating” to its value, including the “circumstances of persistence under which it was obtained, the narrow manner (not sworn) in which it was finally consented to be given and [Thomas’] motive for making the recantation.” The District Court determined that the recantation “is not reliable evidence and does not raise a doubt about the guilt of Marble, either on its own or in light of the proof of Marble’s guilt adduced at the time of Marble’s trial.” [Further, as Marble’s counsel acknowledged during oral argument, the law requires that recantations are to be “viewed with great suspicion.” Clark, ¶ 37.
¶48 Applying the new legal standard, I would conclude that the factual record clearly demonstrates that the new evidence, that being Thomas’ unsworn recantation, fails to “establish that the petitioner did not engage in the criminal conduct.” Opinion, ¶ 35; § 46-21-102, MCA. I would affirm the District Court.